**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HONESDALE VOLUNTEER** | : | |
| **AMBULANCE CORP. INC.,** | | |
| | : | |
| **Plaintiff** | | **CIVIL ACTION NO. 3:11-1488** |
| | : | |
| **v.** | | |
| | : | **(JUDGE MANNION)** |
| **AMERICAN ALTERNATIVE** | | |
| **INSURANCE CORPORATION,** | : | |
| | | |
| **Defendant** | : | |

## M E M O R A N D U M

Pending before the court is defendant's motion for summary judgment, (Doc. 27), on plaintiff's claims for breach of contract and bad faith pursuant to 42 Pa. C. S. §8371. (Doc. 1). For the following reasons, the motion will be **GRANTED IN PART** and **DENIED IN PART**.

## I.   BACKGROUND[1]

This lawsuit arises from defendant American Alternative Insurance Corporation's ("AAIC") denial of an insurance claim for damage to plaintiff

---

[1]Unless otherwise noted, facts are taken from plaintiff's, (Doc. 35), and defendant's, (Doc. 28), statements of the facts. Disputed facts are noted. The court notes that in many of its 86 paragraphs, plaintiff's statement of facts contains argument. This statement of facts is not a "short and concise" statement as required by Local Rule 56.1. The court has not considered the unsupported argument portions of the document, pursuant to the local rule. The court also notes that plaintiff's "answer to defendant's motion for summary judgment," (Doc. 36), is an unnecessary response in federal court. Accordingly, the court has not considered Doc. 36.

Honesdale Volunteer Ambulance Corporation's ("Honesdale EMS") property at 364 12th Street, Honesdale, PA, which allegedly resulted from a magnitude 5 earthquake which occurred in Val-des-Bois, Quebec on June 23, 2010. At the time of the earthquake, Honesdale EMS had an insurance policy with AAIC. The insurance policy excluded coverage for "earth movement," but covered earthquake damage and had an "earthquake deductible" of $57,910.00. (Doc. 28-7). Plaintiff argues that the earthquake caused damage to the building, and that the insurance policy in question covered the damage. Defendant contends that damage to the building preexisted the earthquake, was caused by erosion and settlement, and accordingly was not covered by plaintiff's policy. Defendant also argues that the losses were caused by neglect, and thus not covered.

The building is an old 2-3 story unreinforced masonry factory building. It sits near the Lackawaxen River, and some of its lateral support was taken when the river bed was widened by the Army Corps of Engineers in the 1950s. In 2005, Honesdale EMS identified structural concerns with the building, and Stephen Knash, P.E. did an engineering evaluation of the building. He particularly inspected settling and cracking in the floor of the basement, cracking in the west gable wall, and separation of the concrete floor in the building's ambulance garage. He noted that erosion was occurring, causing the settlement of the floor slab. He noted cracks in the west gable wall, which he concluded were caused by erosion and associated movement

2

of the building. (Doc. 28-19).

Defendant engaged Gary Capri, an independent safety inspector and risk surveyor, to examine the building in 2002, 2005, and 2008. (Doc. 35-5). He testified that the focus of his investigations was reviewing the operations of the ambulance company and medical malpractice risks. Although the focus of his investigations was not the state of the property, the forms he filled out did include space to complete information about the building. He testified that he does not do building replacement cost evaluations as part of his job, although he does fill out building evaluation forms. In 2005, he noted that the building was in "average" condition, and that housekeeping was "above average." He also took pictures of the exterior of the building. In 2008, after a "review of operations and a physical tour through the Ambulance Station," he did not recommend any changes to operations or the facility. (Doc. 35-11). Also in 2008, AAIC, using information from a risk control representative, determined that the replacement cost of the building had nearly doubled and strongly recommended that plaintiff increase the limit on its policy. Id.

On the day of the earthquake, workers at the Honesdale EMS building reported feeling it shaking and hearing squeaking noises from the walls. They evacuated the building, and, once outside, found issues with the building that plaintiff contends were not preexisting. This damage included cracks in the masonry, loose bricks on window arches, and the window at the top of the west gable wall being dislodged and appearing to be falling into the building.

3

The building was condemned on that day after a preliminary inspection by Wayne Earley, the town code enforcer, and Arnie Bertsche, an engineer.

The day after the earthquake, Honesdale EMS reported its claim to AAIC through its insurance agent AM Skier. An outside adjustment company, Gerald Williams Adjustment Service ("Gerald Williams"), was engaged by AAIC to assist in investigating the claim. Jack McDermott, an adjuster from Gerald Williams, inspected the property on June 24. He opined that the earthquake had not damaged the building. The testimony of Jennifer Fountain, (Doc. 35-8), and Alan Cooper, Esq., (Doc. 35-7), AM Skier employees, indicates that they felt Mr. McDermott was more of an advocate for non-payment of the claim than a factfinder, that he was abrasive and unprofessional, and that he used foul language, calling the claim "bogus" or "bullshit." Mr. McDermott and defendant dispute this contention. (Doc. 28-9).

Ms. Fountain also testified that she felt that Gregory Joy, another Gerald Williams adjuster, was also determined not to pay the claim. (Doc. 35-8, at 64-66). She noted that during a telephone conversation, Mr. Joy referenced anonymous blog posts critical of Sharon Gumpper, the executive director of Honesdale EMS, and newspaper articles indicating that EMS had been attempting to relocate from its current building for some time.  Id. at 24-26. Ms. Fountain thought that he was using those posts and items as justifications for not paying the claim. Another AM Skier  employee, Kim Latsch, testified to a similar phone call with Mr. Joy. (Doc. 35-6, at 33).

4

In 2008 and 2009, Ms. Gumpper had requested grant funding from elected officials, describing the building as "deteriorating rapidly" and indicating that it was a race against time before the building became unfit for occupation. Plaintiff admits this, but contends that the part of the building that was inadequate was the ambulance garage, and not the office space which plaintiff alleges was harmed by the earthquake.

Michael. H. Queen, P.E., an engineer engaged by AAIC, also did an initial inspection of the building on June 25, 2010. Queen opined that his investigation of the building and discussions with Arnie Bertsche and Sharon Gumpper led him to conclude that the building had not been damaged as a result of the earthquake. The claim was denied on July 9, 2010.

Honesdale EMS requested additional consideration of the claim following the July 9 denial. Plaintiff submitted a report by Arnie Bertsche in support of the request for reconsideration. His report concluded that the building had significant structural issues that made it "more than plausible" that the building could suffer damage from the earthquake. AAIC agreed to consider the claim further, and re-inspected the building on July 23, 2010. Mr. Queen, Mr. Bertsche, Mr. McDermott, and Alan Cooper, an AM Skier representative, were present for the second inspection. Mr. Queen submitted a supplemental report addressing Mr. Bertsche's report and the re-inspection, and again concluded that the building was not damaged as a result of the earthquake. AAIC maintained its prior denial of the claim on August 10, 2010.

Following the second denial of the claim, Honesdale EMS filed the instant suit alleging breach of contract and bad faith. (Doc. 1).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Casualty & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249 ; *see also* Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

6

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); *see also* Celotex, 477 U.S. at 325.  If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

## III.   DISCUSSION

## A.   Breach of Contract Claim

The parties dispute whether the damage caused to the Honesdale EMS

7

building was caused by the Val-des-Bois earthquake, and therefore covered under plaintiff's insurance policy with AAIC. Defendant argues that plaintiff has failed to establish that it suffered a "direct physical loss" as a result of the earthquake, and that the evidence instead shows that any damage to the building was caused by preexisting, excluded conditions, including earth movement, building settlement, and neglect.

"To sustain a breach of contract claim under Pennsylvania law, a plaintiff must prove: (1) the existence of a contract; (2) a breach of duty imposed by the contract; and (3) resultant damages." Wagner v. Tuscarora School Dist., 2006 WL 167731, *13 (M.D.Pa. Jan. 20, 2006)(*citing* J. F. Walker Co., Inc. v. Excalibur Oil Group, Inc., 792 A.2d 1269, 1272 (Pa. Super. 2002)). Under Pennsylvania law, unambiguous terms of an insurance policy are to be enforced as written. T.H.E. Ins. Co. v. Charles Boyer Children's Trust, 455 F.Supp. 2d 284, 294 (M.D. Pa. 2006)(*aff'd* 269 F.App'x 220 (3d Cir. 2008)).

"'The insured bears the [initial] burden of proving facts that bring its claim within the policy's affirmative grant of coverage.'" Sciolla v. West Bend Mut. Ins. Co., 2013 WL 6671488, at *3 (Dec. 18, 2013 E.D. Pa.)(*quoting* Koppers Co., Inc., v. Aetna Cas. & Ins. Co., 98 F.3d 1440, 1446 (3d Cir. 1996)). However, where an insurer defends itself on the grounds that a policy exclusion applies, the burden shifts to the insurer to prove the applicability of exclusions or limitations on coverage. Sciolla, 2013 WL 6671488, at *3 (*citing*

Koppers, 98 F.3d, at 1446). In Pennsylvania, insurance contracts are often "considered to be contracts of adhesion," and so any ambiguity must be construed against the insurance company, as must exceptions and exclusions to the general liability of the insurer. Cincinnati Ins. Co. v. Cham's Jewelry Art, Inc., 30 F.App'x 793, 795 (3d Cir. 2002)(*citing* Slate Const. Co. v. Bituminous Cas. Corp., 323 A.2d 141 (Pa. Super. 1974)).

### 1.   Direct Physical Loss

Here, the policy covers "direct physical loss or damage to 'real Property' at a 'premises' caused by or resulting from any 'covered cause of loss.'" (Doc. 28-7). "Direct physical loss" is not defined in the policy, but courts have found it to mean "that the loss must have a 'close logical, causal, or consequential relationship' with an earlier event." Cher-D, Inc. v. Great American Alliance Ins. Co., 2009 WL 943530, at *6 (Apr. 7, 2009 E.D. Pa.)(*citing* DiFabio v. Centaur Ins. Co., 531 A.2d 1141, 1143-44 (Pa.Super. 1987)).

The earth movement exclusion in the policy states that any "sinking, rising, shifting, freezing, thawing, erosion, compaction, or expansion of the earth, including mine subsidence" is not covered. Building settlement is also not covered. However, "earthquake" damage is explicitly noted to be covered in the text of the exclusion. There is no dispute that the building suffered damage on account of earth movement. The question is whether that movement was erosion and settlement, excluded under the policy, or

earthquake.[2]

Defendant argues that the "earth movement" exclusion applies because there is no evidence that any of the damage reported by plaintiff was new as a result of the earthquake. AAIC contends that the building had well-documented problems regarding cracked walls and floor displacement, which were reflected in the Knash report of 2005. (Doc. 28-19). Defendant argues that plaintiff's claim is merely that the problems "got worse."

The 2005 Knash report shows that in 2005, there was damage to the building in the form of settling and cracking in the basement, cracking in the west gable wall, and separation of the north wall of the ambulance garage from the concrete floor slab. Knash concluded that the problems in the

_____

[2] Defendant, relying on Northern Ins. Co. of New York v. Aardvark Assoc., Inc., 942 F.2d 189, 194 (3d Cir. 1991), et al., contends that coverage for earthquake is an exception to the policy exclusion for "earth movement," and that therefore the burden shifts to the insured to show that the exception to the exclusion applies. The Third Circuit case cited by defendant discusses a specific exception to pollution exclusions not at issue in this case, and the other cases cited by defendant are not controlling. Even assuming, however, that the cases are analogous, the instant policy is unclear as to whether earthquake coverage is an exception to an exclusion, or a separate covered cause of loss. The text of the "earth movement" exclusion ("But we will cover 'earthquake'") seems to except out earthquake damage from the exclusion. (Doc. 28-7, at 25). But the policy also shows that plaintiff had a "special" earthquake deductible, lending support to the interpretation that the earthquake coverage is a separate covered cause of loss. (Id. at 14, 29). The policy also refers to "coverage" for earthquake damage. (Id. at 29). The contract is thus ambiguous as to the nature of the earthquake coverage. As ambiguity in insurance contracts is to be construed against insurers, the court finds that the burden of proving that the "earth movement" exclusion applies rests with the defendant.

basement and west gable wall of the building were being caused by loss of

fine material from under the building, which resulted in settlement. (Id. at 2-3).

Mr. Knash inspected the building again on August 11, 2010. (Doc. 28-20, at

75). He testified at his deposition that he "couldn't say that the conditions did

not get worse" between 2005 and 2010, and that his "gut reaction" was that

they "probably did get a little worse. I couldn't tell you whether that was a

result of an earthquake or just Father Time continuing to make the building

move." (Id. at 79-81).

Plaintiff's expert Mr. Bertsche's report also reflects uncertainty about the

cause of the damage to the building. He noted that he "can't conclude one

way or the other whether" the damage to the building "did or did not happen

as a result of the seismic event." (Doc. 28-22, at 156). The report of plaintiff's

other expert, Richard Daniels, P.E., is more certain regarding the cause of the

damage.[3] He states that "the damage to the Honesdale EMS building that

---

[3]Defendant contends that plaintiff may not rely on the report of Mr.
Daniels because it conflicts with the opinion of plaintiff's other expert, Mr.
Bertsche. Defendant argues that Dill v. Scuka, 279 F.2d 145 (3d Cir. 1960)
precludes consideration of conflicting expert evidence. However, Dill and a
later case, Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.,
324 F.Supp. 2d 731, 745 (W.D. Pa. 2004), hold that a court must only exclude
conflicting testimony where experts "so vitally disagree on essential points as
to neutralize each other's opinion evidence." Here, Bertsche and Daniels are
not in vital disagreement, as Mr. Bertsche did not even reach a conclusion to
a reasonable degree of certainty regarding the cause of the damage.
Moreover, Dill considered whether inconsistent expert testimony at trial
required involuntary dismissal, and did not address a motion for summary
judgment. It is thus inapposite to the instant case. See Capricorn, 324
F.Supp. 2d, at 745.

resulted in the building loss and it being condemned was caused by the incident earthquake shocks." (Doc. 35-2). He maintained his position that the Val-de-Bois earthquake, and not any preexisting earth movement or building settlement, caused the damage to the building after reviewing the various expert reports provided by defendants. (Doc. 35-3). Plaintiff also puts forth the letter of Ronald Bielinski, a registered architect and engineer, who believes that the earthquake resulted in substantial damage to the building. (Doc. 35-4).

Plaintiff has put forth the reports of Mr. Daniels and Mr. Bielinski, as well as the testimony of Suzanne Dey, a Honesdale EMS employee who felt the building shake on the day of the earthquake and who testified that after the earthquake, the top window in the gable wall was tilted inward, which it had not been before the earthquake. She also testified to cracks in the building becoming more visible after the earthquake, with some cracking being visible from her car while driving into work. (Doc. 35-13, at 45-50). Plaintiff submitted similar testimony from other Honesdale EMS employees, including Janice Klinkiewicz, (Doc. 35-16, at 41-45), and Robert Morcum, plaintiff's handyman. (Doc. 32-12, at 8-13). This evidence is a sufficient showing of direct physical loss, and so the burden shifts to AAIC to show that exclusions apply.

Defendant submitted expert reports regarding the cause of damage. Andrew Whittaker, Ph.D., S.E., an earthquake engineer, opined that the 2010 Val-de-Bois earthquake did not damage the building, but that damage to the

building was preexisting. (Doc. 28-40, at 22). Stan V. Siler, S.E.'s report concluded that the damage to the building had largely existed at the time of Knash's 2005 report, and that if the earthquake caused any amplification of the preexisting damage, it was minor. He additionally concluded that the distress of the building is a result of degrading of soil, weakening of the structure's brick walls, and possible settlement of the soil. (Doc. 28-28, at 122). Gary L. Popolizio, P.E. opined that the earthquake did not damage the building. (Doc. 28-39).

Drawing all inferences in favor of the non-moving party, the court finds that there is a question of material fact as to the cause of the damage to the Honesdale EMS building. Plaintiff has submitted evidence to establish that it suffered a direct physical loss, and simply because defendant's experts disagree with the plaintiff's as to the cause does not establish what actually caused the damage that led to the plaintiff's claim for coverage. The court cannot determine that no reasonable jury could find that the earthquake caused a covered loss. Thus, summary judgment for the defendant cannot be granted on the grounds that plaintiff has not put forth enough evidence of direct physical loss to create a question of material fact.

2.    The Lead-In Clause

AAIC next argues that even if the earthquake was a partial cause of the damage, the lead-in clause to the "exclusions" sections of the policy states

that damage resulting "directly or indirectly" from neglect, earth movement, or building settlement "regardless of any other cause or event that contributes concurrently with or before, during, or after the loss or damage" is not covered. (Doc. 28-7). Such lead-in clauses are to be given full effect, and they preclude coverage if they are in combination with applicable exclusions. T.H.E. Ins. Co., 455 F.Supp. 2d at 298 (*citing* Spece v. Erie Ins. Group, 850 A.2d 679, 684 (Pa.Super. 2004)).

Defendant argues that several exclusions apply in this case: earth movement, building settlement, and neglect. The court must determine if these exclusions apply to the case at bar. It is undisputed that earth movement caused the damage in question here, but as discussed above, there is a question of material fact as to whether that earth movement was gradual sinking, shifting, and erosion not covered by the policy, or earthquake, covered by the policy. Thus, the court cannot grant summary judgment on the basis that the lead-in clause and earth movement exception preclude coverage.

The court additionally notes that the T.H.E. Ins. Co. court addressed an earth movement exclusion which was not intended to exclude coverage from non-catastrophic erosion and settlement. The court instead was addressing a policy which excluded coverage for natural disasters, noting:

> "'[t]he reason for the insertion of the exclusionary clause ...
> in all risk insurance policies is to relieve the insurer from
> occasional major disasters which are almost impossible to predict

14

and thus to insure against. There are earthquakes or floods which
cause a major catastrophe and wreak damage to everyone in a
large area rather than on individual policyholders.'"

T.H.E. Ins. Co., 455 F.Supp. 2d, at 294 (*quoting* Wyatt v. Northwestern
Mutual Ins. Co., 304 F.Supp. 781, 782-83 (D.Minn. 1969)). Indeed, "the Third
Circuit has noted that 'earth movement exclusions in insurance policies
generally refer to and have historically related to catastrophic and
extraordinary calamities such as earthquakes and landslides.'" Matson-
Forester v. Allstate Ins. Co 2014 WL 580267, at *4 (M.D. Pa. Feb 12,
2014)(*quoting* Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co ., 833
F.2d 32, 35 (3d Cir.1987)).

This "catastrophic event" variety of earth movement exclusion is
obviously not at issue in the presently disputed contract, in which earthquake
damage is explicitly covered. The present exclusion is quite broad on its face,
and, if applied in conjunction with the lead-in clause, which is also broad, it
could be read to exclude coverage for any building which had even minor
issues with earth settlement or erosion preexisting a loss which was otherwise
covered by the contract. Indeed, it is difficult for the court to imagine many
buildings which are not somehow affected by the "sinking, rising, shifting,
freezing, thawing, erosion, compaction, or expansion of the earth." While the
court rests its decision on the grounds that there is an issue of fact regarding
the applicability of the earth movement exception to this case, the court also
notes that it has not found any Third Circuit or Pennsylvania Supreme Court

15

case enforcing an earth movement exclusion as facially broad as the one at issue in this case.

Defendant similarly argues that the "building settlement" exclusion applies in this case. The exclusion states that the policy does not cover "settling, shrinking, cracking, bulging, or expansion of any pavement, building, or structure." Defendant argues that there had been settling and cracking issues with the building long before the earthquake, and that they are a source or cause of the complained-of damage here. The question of building settlement mirrors that of earth movement in this case. As noted above, there is a question of fact as to causation. Both parties have produced experts who opine oppositely on the question of whether preexisting building settlement caused the complained-of damage, and both have produced other evidence that shows that there is an actual dispute about the cause of damages. Thus, the applicability of the building settlement exclusion is a fact issue for a jury.

In addition, the court again notes its concern with the breadth of the exclusion. The court has not found, nor have the parties put forth, any cases in the Third Circuit or in Pennsylvania that address a "building settlement exclusion." Like the earth movement exclusion in the present contract, the building settlement exclusion here is very broad, and could be read in conjunction with the lead-in clause to preclude coverage in nearly any situation in which an insured building was not in pristine condition before some covered cause of loss, such as an earthquake, befell it.

16

Defendant also relies on the neglect exclusion, arguing that plaintiff's failure to maintain and repair the building is as least partially responsible for the damage for which plaintiff is making a claim. The neglect exclusion reads:

> 5. Neglect meaning your failure to take all reasonable steps to protect your property when it is threatened with loss or damage and to take all reasonable steps to protect your property from further loss after loss or damage occurs.

Just as with the earth movement exclusion and building settlement exclusion, there is very little case law regarding the application of neglect exclusions in insurance contracts, and defendant has not pointed to any cases interpreting similar exclusions. As noted above, issues of fact as to the true cause of the complained-of damage remain. While there is some evidence in the record that ongoing and uncorrected aging of the building contributed to the damage, plaintiff has put forth counteracting evidence sufficient to defeat the motion for summary judgment on the ground that the neglect exclusion applies, including evidence that the building had a handyman, that Gary Capri said that housekeeping at Honesdale EMS was "above average" in 2005, and that at least some repairs were done prior to the earthquake. Summary judgment cannot be granted for defendant on the ground that the lead-in clause coupled with the various exclusions precludes coverage in this case.

3.   The Known Loss Doctrine

Finally, defendant argues that the "known loss" doctrine applies to this

17

case because plaintiff was aware that the building had issues with settlement and earth movement. The "known loss" doctrine provides an affirmative defense for an insurer, and "provides that one may not obtain insurance for a loss that either has already taken place or is in progress." Rohm and Haas Co. v. Continental Cas. Co., 781 A.2d 1172, 1176 (Pa. 2001)(*quoting* Pittston Co. Ultramar America Ltd. v. Allianz Ins. Co., 124 F.3d 508, 517)(3d Cir. 1997)). In applying the known loss doctrine, the question is "whether the evidence shows that the insured was charged with knowledge which reasonably shows that it was, or should [have been], aware of a likely exposure to losses which would reach the level of coverage." Rohm, 781 A.2d at 1176. "Because insurance is intended to protect insureds from unknown risks, an insurance policy does [not] afford protection to an insured who was or should have been aware of the existence of a *covered* condition when entering into an insurance contract." Tower Ins. Co. v. Dockside Assoc. Pier 30 LP, 834 F.Supp. 2d 257, 265 (E.D. Pa. 2011)(*citing* Rohm, 781 A.2d at 1177)(emphasis added).

Defendant's desire for application of the known loss doctrine makes little sense in this case. Here, plaintiff alleges that an *unknowable* event, an earthquake, caused a covered loss, in which case the known loss doctrine cannot apply. Defendant argues that plaintiff knew about settlement and earth movement - causes of loss which are *not covered* by the policy at issue here. Application of the doctrine would be impossible, even assuming that the

excluded causes of loss did contribute to the damage, because the terms of the policy do not allow damage from the allegedly known causes to rise to "the level of coverage."

Further, the doctrine properly applies to cases where a plaintiff intentionally or negligently hides or does not disclose the presence of a covered cause of loss when applying for insurance. *See* Rohm, 781 A.2d at 1177*.* The doctrine also only applies if the insured hid the loss in question during the process of seeking insurance. *See* id; Tower Ins. Co. 834 F.Supp. 2d at 265. It is not, however, apposite at this stage of the proceedings, where defendants have not produced sufficient evidence of when plaintiff knew of any alleged loss or evidence of what plaintiff knew when applying for insurance from defendant. Also, there is evidence that defendant's own inspector saw the building in 2002, 2005, and 2008, defendant raised the building replacement cost, and continued to accept plaintiff's premium payments to insure the building.

For each of the foregoing reasons, summary judgment is **DENIED** as to plaintiff's claim for breach of contract.

B.   Bad Faith

Plaintiff also brings a bad faith claim against defendant, alleging that defendant determined that it would deny the claim before making any investigation, that defendant's investigators ignored the testimony provided

19

by those present in the building on the day of the earthquake, and that defendant failed to conduct a proper investigation of plaintiff's claim.

> 'Bad faith' on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.,* good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005) (*quoting* Terletsky v. Prudential Prop. and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994)). To succeed on a bad faith claim, a plaintiff must demonstrate "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." Verdetto v. State Farm Fire & Cas. Co., 837 F. Supp. 2d 480, 484 (M.D. Pa. 2011), *aff'd,* 2013 WL 175175 (3d Cir. Jan. 17, 2013) (*quoting* Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997)). Mere negligence, however, is not sufficient to establish a bad faith claim. *See* id. (*citing* Polselli v. Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 751 (3d Cir. 1994)). In addition, a plaintiff must demonstrate bad faith by clear and convincing evidence. *See* id.

For an insurance company to show that it had a reasonable basis, it need not demonstrate its investigation yielded the correct conclusion, or that

20

its conclusion more likely than not was accurate. Krisa v. Equitable Life Assur. Soc., 113 F.Supp.2d. 694, 704 (M.D. Pa. 2000). The insurance company also is not required to show that "the process by which it reached its conclusion was flawless or that the investigatory methods it employed eliminated possibilities at odds with its conclusion." Id. Instead, an insurance company must show it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action. Id.

"The 'clear and convincing' standard requires that the plaintiff show 'that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith.'" J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004) (*quoting* Bostick v. ITT Hartford Group, Inc., 56 F.Supp. 2d 580, 587 (E.D. Pa.1999)). The plaintiff's burden is equally high at the summary judgment stage of litigation, and plaintiff must point to evidence that meets this heavy evidentiary requirement. J.C. Penney, 393 F.3d at 367 (*citing* Kosierowski v. Allstate Ins. Co., 51 F.Supp. 2d 583, 588 (E.D. Pa.1999)).

Pennsylvania's bad faith statute, 42 Pa.C.S. §8371, outlines actions a court may take should it find that an insurer has acted in bad faith:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

21

> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

Defendant argues that its prompt response to the claim, its agreement to reconsider the claim upon receipt of the July 16, 2010 Bertsche report, and its reliance on the report of its engineer, Mr. Queen, all show that it acted reasonably and in good faith, and that summary judgment should be granted.[4] Plaintiff argues that Mr. McDermott and Mr. Joy improperly judged the claim before doing an investigation, that Mr. Joy improperly investigated the claim by looking at information online, and that defendant failed to interview witnesses whose testimony supported plaintiff's claim.

Plaintiff has not met its substantial burden of showing by clear and convincing evidence that defendant acted in bad faith. First, and most importantly, "an insurer's reasonable reliance on an engineering expert's report for a coverage decision does not constitute bad faith." Hamm v. Allstate Prop. & Cas. Ins. Co., 908 F.Supp. 2d 656, 673 (W.D. Pa. 2012)(*citing* El Bor Corp. v. Fireman's Fund Ins. Co., 787 F.Supp. 2d 341, 349 (E.D. Pa. 2011)(insurance company's reliance on engineer's findings as a basis for

---

[4] Defendant has also submitted a report from an expert who opines that AAIC did not act in bad faith. The court has not considered this report, as making a bad faith determination at the summary judgment stage does not require "scientific, technical, or other specialized knowledge," but a consideration of the facts. Lockhart v. State Farm Mut. Auto. Ins. Co., 410 F. App'x 484, 487 (3d Cir. 2011)(*quoting* Fed.R.Evid. 702). A district court need not give an expert report any weight in considering a bad faith claim. *See* id.

denial of coverage provides reasonable grounds to deny benefits)). Here, Mr. Queen inspected the building independently two days after the earthquake, meeting with Mr. Bertsche and Ms. Gumpper to review the claim. (Doc. 28-11). He inspected the building again in July. (Doc. 28-16). His opinion was consistent throughout. Plaintiff complains of the attitudes and behaviors of Mr. Joy and Mr. McDermott, but puts forth no evidence that Mr. Queen shared in this behavior or otherwise acted in a biased or improper way. His reports are indicative of having undertaken a reasonable investigation; for instance, they address likely earthquake effects as listed by the United States Geographical Survey. ("USGS"). Under these circumstances, it was reasonable for defendant to rely on Mr. Queen's expert reports.

Plaintiff also argues that Mr. McDermott was determined to deny the claim, and that he acted as an advocate for non-payment, rather than as a fact-finder, when he did his investigation. Plaintiff also points to witness testimony indicating that Mr. McDermott was unprofessional, abrasive, and used bad language. Plaintiff cannot succeed in a bad faith claim on this basis. Mr. McDermott's testimony indicates that he had no responsibility for making coverage decisions. (Doc. 28-9, at 64-65). His report shows that he consulted with Mr. Queen before submitting his adjustment report to AAIC, and that he assumed that AAIC would be relying on Queen's report in making its decision. (Doc. 28-10). "The attitude of a lower level claims representative, who lacked the authority to make final decisions on the claim" and who handled the claim

preliminarily, is not enough to show bad faith. *See* McCabe v. State Farm Mutual Auto. Ins. Co., 36 F.Supp. 2d 666, 671 (E.D. Pa. 1999). And, while of course discourteous behavior, if it occurred, is not condoned, plaintiff has not shown that this sort of behavior constitutes bad faith. *See* Hamm, 908 F.Supp. 2d at 673. In short, plaintiff has failed to demonstrate by clear and convincing evidence that Mr. McDermott's behavior so tainted the investigation of its claim that it creates a cause of action for bad faith.

Plaintiff points to the testimony of Jennifer Fountain that she had a phone conversation with Mr. Joy in which he was looking at anonymous blog posts regarding Honesdale EMS and Ms. Gumpper having looked for new premises for the business in the past. Plaintiff has not pointed to, and the court has not discovered any, case law in the Third Circuit or Pennsylvania prohibiting claim investigators from researching on the internet. "An insurer does not act in bad faith by investigating and litigating legitimate issues of coverage." Hyde Athletic Industries, Inc. v. Continental Cas. Co., 969 F.Supp. 289, 307 (E.D. Pa. 1997). Here, looking into whether there was serious preexisting damage to the building was legitimate and does not evince bad faith on the part of Mr. Joy.

Finally, plaintiff claims defendant's investigation was inadequate because the employees working in the building on the day of the earthquake were not interviewed by defendant. While interviewing the employees may have been helpful in evaluating the claim, the defendant "need not show that

24

the process used to reach its conclusion was flawless or that its investigatory methods eliminated possibilities at odds with its conclusion. Rather, an insurance company simply must show that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action." Hamm, 908 F.Supp. 2d, at 670 (*citing* Mann v. UNUM Life Ins. Co. of Am., No. 02–1346, 2003 WL 22917545, at *7 (E.D.Pa. Nov. 25, 2003)). The other evidence shows that defendant conducted a reasonable investigation.

Defendant responded to the claim the very day after the earthquake, twice investigated the building, acceded to plaintiff's request to review its decision, and reasonably relied upon its expert engineer's report. Plaintiff thus failed to produce evidence that a reasonable jury could find by clear and convincing evidence that defendant failed to conduct a reasonable investigation. Defendant's motion for summary judgment is thus **GRANTED** as to plaintiff's bad faith claim.

## IV.   CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. Defendant's motion is **GRANTED** as to plaintiff's claim for bad faith, and **DENIED** as to plaintiff's claim for breach of contract. A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: March 24, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2011 MEMORANDA\11-1488-01.wpd